GORDON (HARDEN v.). See Case No. 6,-047.

## Case No. 5,608.
### GORDON v. HOBART et al.
[2 Story, 243.] [1]

Circuit Court, D. Maine. May Term, 1842.

BILL IN EQUITY—MASTER IN CHANCERY—REPORT—MATTER NOT INCLUDED IN REFERENCE—USURY—DEBTOR AND CREDITOR—APPLICATION OF MONEY TO PAYMENT OF DEBTS.

1. Where a bill in equity was brought by A. as assignee of B., no waste being charged therein, and the subject-matter was referred to a master to report thereon, who was not authorised to report upon the question of waste, but who nevertheless did, with the consent of the parties, report thereupon; it was held, that waste committed before the assignment could not be inquired into by an assignee; that all of the report pertaining to waste should be stricken out; that, even if such matter had been charged in the bill, the master, not being directly authorised thereto, could not acquire any authority beyond his commission by the consent of parties.

[Cited in Seaver v. Durant, 39 Vt. 106; Waterman v. Buck, 58 Vt. 520, 3 Atl. 506.]

2. Where A. mortgaged certain property to B. to secure a loan of $3,000, no rate of interest being therein fixed, upon the agreement, that A. should take from B. a lease thereof at the yearly rent of $270, which rent was paid until the mortgagee took possession; it was held, that the lease was a mode of securing usurious interest, and was, therefore, not valid; but that legal interest should be allowed in equity, upon the $3,000, for the whole period.

[Cited in Lathrop v. Cheney, 29 Neb. 454, 45 N. W. 617.]

3. There having been various business transactions between A. and B., and various notes received from A. by B., no specific application of which by the mortgagor was shown; it was held, under the circumstances, that the notes were not to be applied to the payment of the $3000.

4. Where money is paid by, or received for a debtor by his creditor, the debtor may appropriate it to the payment of whatever debt he pleases; if he omit to appropriate it, the creditor may apply it to the satisfaction of whatever demand he pleases; if neither party apply it, and various debts be due, the court will make the appropriation thereof, according to the equity of the case.

5. This right of appropriation exists only between the original parties; and, therefore, it

[1] [Reported by William W. Story, Esq.]

was *held*, in this case, that the assignee of A. could not insist, that money in the hands of B. belonging to A., should be applied in discharge of the mortgage.

[Cited in Mack v. Adler, 22 Fed. 573; Case v. Fant, 3 C. C. A. 418, 53 Fed. 44.]

[Cited in Robie v. Briggs, 59 Vt. 444, 9 Atl. 595.]

Bill in equity [by Charles Gordon against Polly Hobart and another]. The bill in substance stated as follows: That John Gordon, on the 25th of November, 1814, mortgaged to John Hobart three lots of land, namely, two in Westbrook, and one in Cape Elizabeth, for the payment of three thousand dollars, loaned to the said Gordon by the said Hobart. That no rate of interest on the said sum was fixed by the form of the said mortgage security; but that the said Hobart exacted an usurious interest of nine per cent. by requiring, as a part of the transaction aforesaid, an indenture of lease of the mortgaged premises, to the said Gordon, at the yearly rent of two hundred and seventy dollars; and that the said Hobart did actually demand and take from the said Gordon the aforesaid usurious interest, under the form of a stipulation for rent. That the said mortgage deed being an usurious security for money loaned contrary to the statute, and, therefore, void in law, can only be sustained in equity for what may be due in equity and good conscience. That John Gordon, on the 27th of November, 1815, in order to secure the said Hobart against a liability as indorser of his note for $1,600, being a loan from the Cumberland Bank, made over to him, the said Hobart, two promissory notes of Josiah Pierce, bearing date Nov. 24th, 1815; and also, as a further security, mortgaged to him certain wharves and flats in Westbrook, then considered amply sufficient to secure the said Hobart, as indorser of the said note. That the said note, having been made to meet a liability of the said Gordon at the Cumberland Bank, was continued and renewed from time to time, and indorsed at each renewal by the said Hobart; and that the said Gordon, for the further security of said Hobart, on the 9th of December, 1817, caused to be made and delivered to him the promissory note of John Warren and Nathaniel Warren, of that date, for $876, due from the said Warrens to the said Gordon. That it was expected, that payment of the said Warrens' note should not be required immediately, but that it should simply lie in Hobart's hands, while he was contented with its security; as had been the case with Pierce's notes above-mentioned. That as the amount of the said Pierce's and Warrens' notes was more than sufficient to pay the bank note for $1,600, it was intended, that the surplus, whenever received by Hobart, should be applied in part payment of his (Hobart's) claim for the $3,-000 aforesaid. That on Sept. 10th, 1816, the said Gordon had given a further sum of $344.27, which, unless required for the indemnity of said Hobart, was to be applied to the satisfaction of his demand against said Gordon. That John Gordon, on the 9th of December, 1817, John Warren and Nathaniel Warren aforesaid, being indebted to him $3,000, caused their note to be made to the said Hobart for $2,124. That the said Pierce's and Warrens' notes remaining, as Gordon supposed, unpaid, and it being uncertain how far Hobart was secured, as indorser of said $1,600 note, by the prior mortgage, the said Gordon, on the 30th of December, 1817, mortgaged two other parcels of land in Cape Elizabeth to the said Hobart as collateral security for the indorsement of the said $1,600 note. That the said Gordon paid the $270, under the name of rent, as aforesaid, for two years, making the sum of $540, the excess of which above legal interest ought to have gone towards the satisfaction of the said Gordon's debts to the said Hobart. That the said Hobart never demanded the $3,000 above-mentioned; but in the spring of 1820, he took possession, with the consent of Gordon, of all the premises mortgaged, both for the $1,600 note and for the $3,000. That the said Gordon, on the 7th of March, 1818, delivered to the said Hobart the promissory note of Barnabas Sawyer and Joshua Webb, for $1,000; on which note said Hobart received about $600, which ought to have been applied as aforesaid. That the said Gordon, on the 4th of March, 1819, delivered to the said Hobart the promissory note of Samuel A. Proctor for $625, the whole of which the said Hobart afterwards received.

The bill admits, that the said Hobart had a right to hold the aforesaid securities, and to apply the same for his indemnity; but insists, that he was bound, after being indemnified for the indorsed bank note, to appropriate the surplus towards the extinguishment of his just demands against the said Gordon. It also admits, that the said Gordon became embarrassed in his circumstances, and unable to pay the demand of the said Hobart, otherwise than as aforesaid; and supposes, that the $1,600 note was paid by means of a renewed note at the Warrens, aforesaid, on the 19th of January, 1818, in part payment of the $2,124 note above-mentioned. It also alleges, that the said Hobart received in his lifetime payment of the whole or of considerable parts of the said Pierce's and of the said Warrens' notes, and of the demand against Proctor, and $600 of the demand against Sawyer; that the said Hobart received the full amount, paid by him, on the $1,600 note, and all damages therefor, and ought to have discharged the before-mentioned mortgagee for his security as indorser, and to have applied the balance to the payment of his other demands against the said Gordon; but that the said Hobart did not do so, but died without rendering any account in the premises. That the said Gor-

don, on the 18th of September, 1819, transferred his interest in the mortgaged premises to Joseph Welsh and Hezekiah Ayer; that the said Welsh and Ayer, on the 5th of September, 1820, transferred this interest to William W. Thackard; that the said Thackard, on the 9th of January, 1832, transferred his said interest to your orator; and that the plaintiff has become seised of the equity of redemption, and acquired all the rights of John Gordon, aforesaid, in the premises. That after the death of the said John Hobart, Polly Hobart, his widow and devisee, the 3d of April, 1830, quitclaimed to Leavitt Hobart all the interest of the said John in the premises; the said Polly having received the rents and profits thereof, from the decease of said John to the time of said conveyance to said Leavitt Hobart.

The bill then states, that the plaintiff (the orator) being desirous of redeeming the mortgaged premises, had requested of the said Polly and the said Leavitt, an account of what was justly due on the said mortgages, and also of the rents and profits of the said premises, received by the said Polly, and by the said Leavitt, and by the said John, during his lifetime; and upon receiving the balance, requested them to deliver up the premises. The bill then charges, that the defendants, admitting a right of redemption as to the mortgage for the security of the $1,600 note, deny, that the said John Hobart was indemnified by the above-mentioned notes of the Warrens, Pierce, &c.; and that the defendants assert, that the said John Hobart had other large demands against the said Gordon, to the payment of which he might justly apply any surplus received as above-mentioned; all which the orator denies, and says, that all accounts between them, excepting those stated as subsisting in this petition. were settled to the 9th of December, 1817; and whereas the said Polly pretends to hold, as executrix, a note of said Gordon for $400, the plaintiff says, that the same was fully paid; and that the said John Hobart received of the said Gordon a bill of sale of a store-house in Stroudwater, of the value of $300, for the rent and worth of which the said Hobart ought to account. And it further charges, that whereas the said Polly and Leavitt set up that the $270, undertaken to be reserved as rent of the premises mortgaged for the $3,000, was in reality so reserved, and on no other account, the orator charges the contrary; that it was, in fact, an exaction of usurious interest; that any pretended agreement for the payment of it is void; and that neither the said Gordon nor his assigns ought to be held to the fulfillment of it. The bill then prays, that the defendants may be holden to answer, and to produce books and accounts, and for repossession of the premises, and for further and general relief.

The condition of the bond of defeasance (by which the conveyance of the 25th of November, 1814, being absolute in its terms, became a mortgage) was in the following terms: "The condition of the above obligation is such, that, whereas the above-named John Gordon has conveyed to the said John Hobart certain real estate, viz., a certain lot of land situated in the town of Westbrook, and containing about forty-five acres, be it the same, more or less, as will more fully appear by said Gordon's deed to said Hobart, which deed bears even date with the presents; which real estate is conveyed to said Hobart to secure the payment of three thousand dollars. Now, be it known, that if the said John Gordon, his heirs. executors, administrators, or assigns, shall pay unto the said John Hobart, his heirs, executors, administrators, or assigns, the sum of three thousand dollars, in three months after having due notice, and the same being demanded by the said Hobart, his heirs, executors, administrators, or assigns, the same to be paid in gold or silver, then I, the said John Hobart, do by these presents bind myself, my heirs, executors, administrators. or assigns, in the penal sum aforesaid, to give to the said John Gordon, his heirs, executors, administrators or assigns, a good and sufficient deed of conveyance of the within named premises, which if well and truly executed and delivered to the said Gordon, his heirs, executors, administrators or assigns, then the within written obligation to be void and of no effect; otherwise to remain in full force and virtue. John Hobart."

The lease referred to in the bill, was in the form of an ordinary lease, for the term of one year from Nov. 25th, 1814, yielding and paying rent of 270 dollars for the said year; and the same sum for each and every year the said Gordon should occupy or improve the same; and the lessee promised to pay the rent in two equal half-yearly payments, one on May 25th, and one on November 25th. The plaintiff having died, a bill of revivor was filed in October, 1835, on behalf of his heirs; and to that is added, at the May term, 1836, an express waiver of any objection to the $3,000 mortgage, on the score of usury: with an offer to fulfil the conditions. so far as they have not been performed, as the court may direct. The answer having been put in, and evidence taken, the cause came on for a hearing at the October term, 1836, and the proceedings had thereon are fully stated in Gordon v. Hobart [Case No. 5,609]. The cause now came on at this term to be heard upon the master's report, and the exceptions taken thereto by the parties.

The master's report was as follows:

In Chancery.—Charles Gordon and Others, Plaintiffs; Leavitt Hobart and Sally Hobart, Defendants. In pursuance of the order of this honorable court made in the above cause, October term, A. D. 1836, and a commission issued thereupon, bearing date April 1st, 1839, by which it was referred to me, as a master in chancery, according to the bill of

complaint of the said plaintiffs, and the respective answers thereto of the said defendants, in relation to the use and improvement of certain real estate therein set forth, to take an account of the rents and profits thereof, and to report what is due upon the footing of all and each of the mortgages set forth in the said bill of complaint, making all due charges against, and all due allowances to, the defendants, I have caused the parties aforesaid to appear before me on several set days by their respective solicitors, and have examined their several accounts and evidence, and do thereon report as follows:

1. On the mortgage made by John Gordon to John Hobart, dated November 25th, 1814, I find to be due as follows:

| | | | | |
|---|---|---|---|---|
| Principal, | | $3,000 | | |
| Interest, 1 year, 47 days, | | 203.50 | | |
| | | $3,203.50 | | |
| Deduct indorsement on Hobart's lease to Gordon, January 11th, 1816, | | 270 | | |
| | | $2,933.50 | | |
| Add interest, 1 year, 47 days, | | 199.33 | | |
| | | $3,132.83 | | |
| Deduct indorsement on the lease, February 27th, 1817, | | 270 | | |
| | | $2,862.83 | | |
| Add interest to October 1st, 1839, 22 years, 7 months, 4 days, | | 3,881.02 | | |
| | | | | $6,743.85 |
| Also add for repairs. 1819. Fencing stuff, as per leger, p. 79, | | | $33.20 | |
| 1821 & 1822. Daniel Lombard, labor, | $54.75 | | | |
| Materials. shingling and other repairs, as per leger, | 73.36 | | $128.11 | |
| 1831. Tristram C. Stevens, labor, | 2.25 | | | |
| Materials. | 15.54 | | 17.79 | |
| Parker & Stevens, | $10 | | | |
| Chapman & Chesley, | 13.13 | | 23.13 | 202.23 |
| | | | | $6,946.08 |
| Deduct produce and sundries, delivered, as per order, on Charles Gordon, Nov. 3d, 1819, | $159 | | | |
| Less | 31.70 | | $127.30 | |
| Rent of mortgaged premises, exclusive of taxes, paid by Hobart from April 1st, 1821, when possession was taken by John Hobart, | | | | |
| House and garden, | | $ 75 | | |
| 15 acre lot at Stroudwater, | | 100 | | |
| 45 acre lot at Cape Elizabeth, | | 10 | | |
| | | $185 | | |
| per annum, amounting in 18 years, to April 1st, 1839, | | | $3,330.00 | |
| And from April 1st, 1839, to October 1st, same year, 6 months, | | | | |
| House and garden, | | $ 37.50 | | |
| 15 acre lot, | | 100 | | |
| 45 acre lot, | | 7.50 | $145.00 | |
| Waste on the Stroudwater property, viz., garden wall and fences, | | | $50.00 | |
| Waste on the 45 acre lot at C. E. | $310 | | | |
| Cutting wood, and for trees cut for mill logs, estimated at | 50 | $360.00 | $410.00 | 4,012.30 |
| | | | | $2,933.78 |

The reservation of $270 rent of the premises having been stated in the bill to be in lieu of interest, and at the rate of 9 per cent. on the principal, I have thought it correct to allow interest from the date of the mortgage at 6 per cent. per annum, as above stated; though the payment of interest was not stated in the bond of defeasance. The lease is of the same date with the deed and defeasance, and assumed by me to be part of the same transaction, and to have been given with the intent mentioned in the plaintiff's bill; and it appears to me to be more equitable to calculate the interest at 6 per cent. than to charge the plaintiffs with the whole rent expressed in the case. Should I be incorrect in this assumption, and it should become necessary or proper for me to report as to the time when the first evidence of an actual demand appears, I would further state, that I infer from the other evidence, that a demand was made November 3d, 1819, the debt being then partly paid, as above stated, which inference is grounded upon the exhibit No. 18. Also that possession was taken in April, 1821, on all the mortgages in the case, as stated in the answer of Leavitt Hobart. I have made no rests since February 17th, 1817, because I have not found that the rents and profits have at any time been equal to the amount of interest accrued at the time they were received.

2. It appears from the first deposition of Levi Cutter, that the note of $1,600, dated November 24th, 1817, was applied as payment of the debt secured by the deed and defeasance, conditioned for the payment of $1,600, dated November 27th, 1815; and from this I infer, that both securities were for the same debt. This result is confirmed by the fact, that the plaintiffs produce in their own custody the series of notes for the same amount, from the note dated November 27th, 1815, to a note discounted as for the renewal of a note in the same series June 9th, 1817, inclusive. The admission of this series of notes is objected to by the defendants, because the notes were not among the papers previously exhibited to the court. If the admission of them is irregular, it may be proper for me to add, that I view them as having operated as cumulative evidence, and am not aware, that the result would have been different, if they had been entirely excluded. I have, therefore, inferred, that the second mortgage, or the deed and defeasance, dated November 27th, 1815, is fully satisfied; and it appears by the admission of the parties, that no rents and profits have ever been received from this source by the defendants, for which they should be accountable in this action, the premises having been covered by a prior unredeemed mortgage to a third person.

3. It also appears from the deposition of Levi Cutter, that the note of John and Nathaniel Warren for $1,600, dated January 19th, 1818, discounted at the Cumberland

Bank, was received by the bank in payment of the debt secured by the note of $1,600, given by John Gordon to John Hobart, dated November 24th, 1817, after several renewals of the same; and from the deposition of Nathaniel Warren, taken in connection with the memorandum under seal, dated February 17th, 1817, given by John Hobart to John Gordon, and the note for three thousand dollars from the said Gordon to the said Hobart, and the said Gordon's deed to the said Hobart of the Conant mill and privilege, the two last papers also bearing the same date of February 17th, 1817, I infer that the note for $1,600, dated November 24th, 1817, purporting to be secured by the mortgage of that date, was in fact paid to the Cumberland Bank from the funds of the said John Gordon, held in trust for him by the said John Hobart.

From these facts the conclusion is drawn that the third mortgage was fully paid on the 19th of January, 1818, by the note of John and Nathaniel Warren, and that all the rents and profits of the real estate included in the said third mortgage should have belonged to the said John Gordon. I might have found more difficulty, notwithstanding the direct evidence in the case, in arriving at a result at first view somewhat questionable, did it not appear probable from the transactions here alluded to, as well as other circumstances of the case, that there was a species of trust and confidence between the parties, leading to anomalies in the apparent transaction of their mutual business, which, whilst it may have been prejudicial to the legal rights of creditors of the mortgagor, was at the same time not altogether safe for the parties directly concerned. If the plaintiffs may recover in this action for the rents and profits of the estate covered by the third mortgage after the debt has been paid, I consider the fair occupation rent of the seventy-five acre lot at Cape Elizabeth to be twenty-five dollars a year, and of the twenty acre lot, five dollars a year, exclusive of taxes; that is to say,—

| | | |
|---|---|---|
| 18 years from April 1st, 1821, at $30 | $540 | |
| From April 1st, 1839, to Oct. 1st, 1839 | 20 | |
| | | $ 560 |
| To this amount is to be added for trees cut, and other injury to the premises in the nature of waste on the 75 acre lot, at sundry times | $525 | |
| Amount received for damages for a road over the same in 1834 | 60 | |
| Waste on the 20 acre lot | 30 | |
| | | 615 |
| | | $1,175 |

It was admitted at the hearing before me, that Jesse Gordon, the late plaintiff in this action, filed a complaint in the district court of the United States for an injunction against Leavitt Hobart, one of the defendants, on account of waste alleged to be committed and continued by the said Leavitt on the real estate included in this mortgage, and that a citation was thereupon issued by the Hon. Ashur Ware, judge of said court, on the 10th day of December, 1834, returnable on the 13th day of the same December, and served upon the said Leavitt; that there was a hearing of the parties pursuant thereto; and that the process was afterwards discontinued in pursuance of an arrangement between the parties; but that no record of the proceedings exists. It is also proved that some of the waste above mentioned was committed after the discontinuance of the said proceedings, but not to any very considerable extent.

4. On the whole view of the case, I cannot come to the result, that the avails of the two notes, signed by Josiah Pierce, dated November 24th, 1815, amounting to $900 besides interest, nor of the note of J. and N. Warren for $876, dated December 9th, 1817, all of which notes were pledged for the security of John Hobart, on account of a note or notes for $1,600, though it is in evidence, that the said sums were paid to the said John Hobart, being securities received by him of the said John Gordon, and that it does not appear, that they were applied to the above mentioned debt of $1,600, are therefore to be presumed to be applicable to the mortgage for three thousand dollars, dated November 25th, 1814. The second deposition of Levi Cutter, and other evidence in the case, disclose other pecuniary transactions between the parties, leaving such an inference quite uncertain, and such as, considering the plaintiffs also merely in the place of assignees of the mortgagor, and after the decease of the original mortgagee, has induced me to leave these notes out of the case, so far as they are urged as proving part payment of the first mortgage of $3,000. It would even be easier to suppose, that the two mortgages for $1,600 were independent of each other, and both in full force at the same time, and that all the above payments should be directly applied to one or the other of them.

5. For the like reasons, the sums referred to in the note of September 10th, 1816, given by the said John Hobart to the said John Gordon, being $344.27 cents,—the sum of $500 appearing by the deposition of Levi Whitman to have been collected of Sawyer and Webb, the balance of J. and N. Warrens' notes, being $524, and the $556 collected on S. A. Proctor's mortgage, are left out of the calculation, not being specified as applicable to any particular debt or debts. If the court find me wrong, the error can be easily corrected in the statements, as the sums are already ascertained, and they are proved to have been paid to the said John Hobart from securities or funds received by him of the said John Gordon.

6. The parties agreed, before me at the hearing, that I should consider the subject

of waste as affecting all or any of these mortgages, so far as I legally might do, if the same had been expressly mentioned in my commission. Having been requested by the solicitor for the defendants to report, to whom the waste is chargeable as between the defendants, I find that all the waste which has been proved in the case, was committed by or under the defendant Leavitt Hobart. What proportion of the same was committed by him before he became the assignee of the mortgages, is not distinguishable by the proof; and it was not particularly inquired into, it being understood by me, as admitted by the parties, that such inquiry would not be material in this suit.

7. In the above results nothing is allowed to the mortgagees for repairs on the fences inclosing any of the premises, except one item, amounting to $33.20 cents, which was charged on John Hobart's leger, exhibited in the case, in 1819, inasmuch as the same have been suffered to go to decay, and in some instances have been removed by the tenant. The occupation rent, as charged, is predicated upon the profit, which might have accrued under ordinary attention to the forms and the common usages of husbandry, without requiring outlays for new materials on the part of the tenant, and the mortgagee has the benefit of the calculation without charging the tenant with the fences, the decay of which in the main is attributable to time. If the fences had been kept in repair, a corresponding deduction would have been made from the occupation rent for the new materials necessary in making such repairs. I have, therefore, thought, that justice would be done to the parties by omitting the subject on both sides of the account, the state of the evidence not authorizing precise statements upon this point.

8. The estimates have also been made upon the supposition, that the taxes were paid by the tenant in possession. The evidence of the taxes was exhibited in the gross, and in one instance, that of the property in Cape Elizabeth, property belonging to the separate mortgages was included in the same tax; and, as in the matter of fences, by expressing any estimated amount as paid for taxes, I must have also made a corresponding addition to the amount of rents and profits on the other side of the account.

9. John Hobart's leger, No. 2, previously exhibited in court, having been mislaid, or rather overlooked, was not present at the hearing before me, but was afterwards found and placed in my hands by the consent of parties. I have made no allowance to either party from the same that are not found under the head of "Gordon Estate," folio 79. My attention was also directed by the solicitor of the plaintiffs to the account of "Joshua Webb," folio 4. I accordingly examined the account last mentioned, but with no result affecting either party in this cause. There

being no evidence at all connecting the entries there contained with the case before me, I thought the dates of the entries alone sufficient to show their irrelevancy.

10. The solicitors for the plaintiffs having requested me to report, whether there was any proof of a demand of $3,000, according to the terms of the bond for the payment of that sum, I further add, that the only evidence of a demand, except what arises from the receipt of the rents and the other offsets stated in the foregoing account relating to the mortgage first mentioned for the said sum of $3,000, is, that Jonathan Tucker, a witness for the defendants, testifies, that in the spring of 1818 or 1819, he went with John Hobart, deceased, to demand money of John Gordon at Stroudwater; that the said Hobart did then demand money of the said Gordon. The said testimony of the said Tucker is credited by me, and is made part of my report of the case.

(Signed)                              Eben Everett.

The plaintiffs filed the following exceptions:

First Exception.—For that it appears in and by the said report, that the said master, in taking an account of what was due upon the footing of the mortgage made by John Gordon to John Hobart, dated November 25th, 1814, to secure the payment of the sum of 3,000 dollars, according to the terms and conditions of the bond of defeasance therewith made, has charged and allowed interest thereon, as appears by the statement of said account: whereas, by the terms and conditions of the said bond, such interest should not have been charged or allowed: or, at most, the said master should have only made an equitable allowance of simple interest against the allowance made in favor of the plaintiffs, for rent received upon and according to the terms of the lease of the same premises, mentioned in the bill, and for the same period of time only; and that only in case the said contract of lease should be taken and deemed as a cover for usurious interest therein contained.

Second Exception.—For that it appears, that the avails of three notes, viz. two signed by Josiah Pierce, dated November 24, 1815, one for $500 and one for $400, making $900, and another of J. & N. Warren, for $876, dated December 9, 1817, with interest, which notes were made and pledged for the security of the said John Hobart, on account of the sum secured by the mortgage, to secure the payment of the sum of 1,600 dollars; and the amount thereof, with interest, was actually paid to the said John Hobart, and not allowed by the master, in payment of the said $1,600 mortgage; nor in any manner for the benefit of the plaintiffs. In which respects, the said plaintiffs except to the said master's report, and humbly appeal therefrom to the judgment of this honorable court thereon.

The defendants filed the following exceptions:

The defendants except to the master's report, as erroneous in the following particulars, viz: 1st. The rents and profits allowed by the master are much greater than they ought to have been. 2d. No allowance ought to have been made by the master for waste; and if the defendants were chargeable for any thing on that account, the amount allowed by the master is much greater than it should have been. 3d. The master has allowed $60 for damages recovered for the laying and making a road through the seventy-five acre lot, in Cape Elizabeth, but has allowed the defendant nothing for making the fences on the said road, which were proved to have cost $45. 4th. The master has allowed nothing for taxes paid by the defendants on the mortgaged premises, which were proved to amount to a large sum, viz., $500.65. 5th. The master has predicated his report on the ground that the mortgage of November 27, 1815, and that of November 24, 1817, are for the same debt, and not separate and distinct, whereas they are, in fact, for different and distinct debts, and ought to be allowed by the master in his report. 6th. The master does not state the facts, on which he makes some allowances in his reports, and refuses to make others. 7th. The master has erroneously allowed the note of November 24, 1817, as paid out of the funds of said Gordon, when the same was paid by the said Hobart out of his own funds, as clearly appears by the evidence in the case, and ought to be allowed to the defendants with the interest thereon. 8th. The amount allowed for repairs on fences is far short of the amount which ought to have been allowed. For the foregoing reasons, the defendants object, and except to said master's report, and appeal therefrom to the judgment of the honorable court thereon.

Charles S. Daveis (with whom were Willis & Fessenden), for plaintiffs.

S. Longfellow and S. Longfellow, Jr., for defendants.

STORY, Circuit Justice. The first point naturally suggested for consideration in the case, is, whether the question of the supposed waste was properly entertained, or could be entertained, by the master, even with the consent of the parties. I am clearly of opinion, that it was not properly cognizable by the master, nor, indeed, in the cause. In the first place, there is no charge in the bill of any waste, and, consequently, no answer to it; and, therefore, the matter was in no sense in issue between the parties; and the court have no authority, by consent, to entertain questions, which are not properly brought before it for consideration by any fit judicial proceedings. In the next place, the reference to the master conferred no authority upon him to institute any such inquiry, even if the matter had been charged in the bill; and, consequently, he had no authority to act in the premises, or to make any report thereon. The consent of the parties could not confer upon him any authority to examine into matters dehors his commission; and the whole proceedings, as to the waste, were, therefore, irregular, and coram non judice. If the matter had been properly before the court, and a more enlarged authority in the master was required, it should have been sought by a proper application to the court in the first instance. In the next place, it is perfectly clear, that, as the original plaintiff, Jesse Gordon, sought relief as assignee of the mortgagor (John Gordon), no waste, which took place antecedently to the assignment to him, could properly, under any circumstances, be inquired into, in any suit brought by him. That waste, if there was any, was no wrong done to him; and the mortgagee (Hobart) was not accountable therefor to him. Now, it is apparent from the evidence in the cause, that the asserted waste in a great measure took place before the assignment to Jesse Gordon. For these reasons, all allowances on account of waste must be struck out of the report.

Let us, then, proceed to the consideration of the exceptions taken by the plaintiff to the master's report. They are two. (1) The allowance of the interest to the mortgagee upon the $3,000 mortgage. (2) The appropriation of the money received by the mortgagee upon the two notes of Pierce, one for $500 and one for $400; and upon the note of J. & N. Warren for $876. My opinion is, that the master has properly made the allowance of the interest. The argument against it mainly rests on this ground: that interest is not stipulated for in the contract, and, therefore, until a demand was made of the principal, and a default of payment thereof, no interest could accrue due. But the argument is not sustained by the facts or by the structure of the bill. The latter insists, that the original contract was upon an usurious consideration, and that thereby an interest of nine per cent. was intended to be reserved; and that the lease to the mortgagor at the stipulated rent of $270 per annum, was but a collusive arrangement to accomplish the purpose. Now, if this be correct, then it establishes beyond controversy, that the $3,000 was originally agreed to be a loan on interest, and, therefore, the plaintiff, who seeks relief against that usury, is entitled to it only upon doing equity; in other words, the only relief, to which the original mortgagor would have been entitled under such circumstances, would be to have the rate of interest cut down to the legal rate of six per cent., which is precisely what the master has allowed. The plaintiff, as assignee, is certainly not entitled to be placed

in a better situation that the original mortgagor. If he is entitled, as assignee, to any relief against the usury (a point, upon which I give no opinion,) it must be upon his placing the mortgagee in precisely the same predicament, as to interest, as if he were the original mortgagor. The question of usury is now waived by the plaintiffs; but that does not, in the slightest manner, vary the rights of the parties, as to lawful interest.

But it is plain, that the original parties did contemplate the payment of interest upon the loan ab origine. I agree with the master in thinking, that the lease was but a mode of securing an illegal interest, that of nine per cent.; and that the lease and the mortgage are to be treated not only as contemporaneous acts, but as a part of one and the same transaction. As long as the lease continued and the rent was paid, it was an usurious interest, which this court would not sanction. But when that ceased, and the mortgagee took possession, it was manifest, that interest, according to the original contract, was to be allowed; and the most that can be said, is, that the interest in equity ought to be cut down to the legal interest during the whole period, which has been actually done by the master. Besides; if it were material (which, in the view, which I take of the case, it is not), the entry of the mortgagee into possession must be deemed an entry after a demand of the payment of the principal, and a default on the part of the mortgagor, with a view, perhaps, to a foreclosure; but, if not, at all events to secure his interest and other rights under the loan. There is also the positive evidence of Jonathan Tucker, stated and credited by the master, that the mortgagee, in the spring of 1818 or 1819, went to the mortgagor and demanded the payment of money from him; and this may well enough be deemed to be a demand of the mortgage debt, then due, if it were necessary to sustain the claim of interest. I place no stress upon it, because the other circumstances are sufficient, in my judgment, to establish the claim. Upon the whole, for the other reasons already stated, I am of opinion, that the right to lawful interest attached; and the master has, therefore, properly allowed it; and the exception on this point is over-ruled.

As to the other exception, there is no doubt, that the money was actually received upon the Pierce notes and the Warren note by the mortgagee. But, how the money received thereon was actually applied, we have no means, after so great a lapse of time, of ascertaining. The money was originally intended to be applied to the discharge of the $1,600 mortgage. It was not so applied. But there were other transactions between the parties of a secret and confidential nature, to which it might have been applied, and, to which, in the opinion of the master,

formed after sifting all the circumstances, it was probably applied. There is enough disclosed in the case to show, that there was a designed obscurity and concealment of the parties of the business transactions and arrangements between them. And there is strong, if not vehement, reason to presume, that the real object was to cover up the property of the mortgagor, so that it should not be reached by his creditors; and, therefore, a cloud was thrown over every transaction, and money, apparently intended for one object, might have been studiously held out as actually applied to another. At least, there is enough in the case to lead one to doubt, whether the money received on those notes was not actually applied, by the consent both of the mortgagor and mortgagee, to other of their private transactions.

It is sufficient, however, to say, that no appropriation was ever made by either party of the proceeds of either of these notes, to the payment of the $3,000 mortgage. What, under such circumstances, is the rule promulgated by both courts of law and courts of equity? It is, that, where money is paid by, or received for, a debtor, by his creditor, the debtor has a right to make the appropriation to what purpose he pleases. If the debtor makes no appropriation, then the creditor may apply it to the satisfaction of any demand, which he has against his debtor, at his own pleasure. If neither party make any such application, then, if there are various debts due to the creditor, the court will make the application according to its own view of the law and equity of the case, under all the circumstances.

But this right of appropriation is one strictly existing between the original parties; and no third person has any authority to insist upon an appropriation of such money in his own favor, where neither the debtor nor the creditor have made or required any such appropriation. What claim can an assignee of the mortgagor have, to insist that money in the hands of the mortgagee, belonging to the mortgagor, shall be applied in discharge of the mortgage, unless such application of it was clearly contemplated by the original parties, and the assignee has made the purchase with the understanding, that the money should pro tanto go to the extinguishment of the mortgage? The maxim in such a case ought to prevail, "Res inter alios acta, alteri nocere non debet;" and, I may add, that, in such a case, "nec prodesse potest." It would be inequitable to allow an assignee of the mortgagor to make a profit by an appropriation of the money of the mortgagor in the hands of the mortgagee, which neither of them ever contemplated appropriating to the extinguishment pro tanto of the mortgage.

But it is sufficient to say, that, in the present case, there is no evidence, that the money was not actually appropriated at or after the time, when it was received, by the orig-

inal parties, to other purposes; and, considering the great lapse of time, and the obscurities hanging over all the transactions, it would be unsafe for the court not to presume, that the money was applied to other purposes; especially, as there were no subsequent proceedings between the parties, which could lead the court to any other conclusion. The master's judgment upon this point seems to me to be entirely correct, and founded upon just reasons.

Then, as to the exceptions on the part of the defendants. The first is to the sum allowed for the rents and profits, which, it is asserted, is too large. But the master has stated all the circumstances, and it seems to me, that they sufficiently establish the propriety of the allowance. The second, respecting the allowance for waste, has been already disposed of. The third is for the non-allowance of the $45, expended for fences by Hobart. But that the master has fully explained. In fixing the occupation rent, the master took into consideration the subject of the fences, and made the rent less by what ought to be allowed the tenant for keeping the fences in proper repair. The like answer may be given to the fourth exception respecting taxes. A suitable deduction was made from the rent by the master, founded upon the supposition, that the tenant paid the taxes.

The fifth exception is founded upon the notion, that the two mortgages of $1,600 were given for distinct and independent debts; and not for one and the same debt. But upon the statements made by the master, it seems to me very clear, that they were both given as securities for one and the same debt. It appears from the statement of the master, that there was a prior unredeemed mortgage on the premises, which were originally mortgaged for the payment of the $1,600; and this fact alone, independent of the other very strong circumstances in the case, would lead one to the conclusion, that the second mortgage was taken to supply the defective security by the first. But, taken in connection with the other circumstances, the conclusion seems almost irresistible, that they were both for one and the same debt.

The other exceptions require no particular notice. The seventh is disposed of by the considerations already suggested under the preceding head. The sixth and eighth are too vague and general to be of any validity, and, therefore, must be dismissed from the view of the court.

Upon the whole, I am of opinion, that the exceptions filed by both parties ought to be overruled; and that the master's report ought to stand confirmed in all the particulars, excepting the allowance for the supposed waste, which is to be struck out; and, being thus reformed, the report is to stand confirmed accordingly. Decree accordingly.