No. 19,872.

THE WYANDOTTE COAL & MINING COMPANY, *Appellee,* v. THE
WYANDOTTE PAVING & CONSTRUCTION COMPANY et al.
(THE SOUTHERN SURETY COMPANY, *Appellant*).

No. 20,162.

THE WYANDOTTE COAL & LIME COMPANY, *Appellee,* v. THE
WYANDOTTE PAVING & CONSTRUCTION COMPANY et al.
(THE SOUTHERN SURETY COMPANY, *Appellant*).

### SYLLABUS BY THE COURT.

1. PAVING CONTRACTS—*Application of Payments by Debtor and Credi-
tor—Surety May Not Control.* Third persons, such as guarantors,
sureties, indorsers, and the like, secondarily liable on one of several
debts, can not control the application which either the debtor or the
creditor makes of a payment, and neither the debtor nor the creditor
need apply the payment in the manner most beneficial to such persons.

2. SURETY COMPANY—*Actions for Paving Materials—Amount of Judg-
ments—Evidence Supports Findings.* A surety company guaranteed
payment for materials used by a construction company in paving cer-
tain streets, another construction company, with the same officers and
the same general manager, had a contract for paving certain other
streets, and each company purchased its materials from plaintiff.
*Held,* that the evidence is sufficient to support a finding that certain
checks signed by the first construction company and delivered to plain-
tiff by the manager of both companies, with direction to credit the
same to the account of the second company, were properly applied as
directed, and that under the circumstances in evidence the surety com-
pany can not complain.

Case No. 19,872. Appeal from Wyandotte district court, di-
vision No. 3; HUGH J. SMITH, judge. Consolidated with—

Case No. 20,162. Appeal from Wyandotte district court,
division No. 1; EDWARD L. FISCHER, judge. Opinion filed
February 12, 1916. Affirmed.

*Arthur J. Stanley, Guy E. Stanley,* both of Kansas City,
*Thomas E. Wagstaff,* of Independence, *Joseph P. Fronton,
John J. Cosgrove,* both of Kansas City, Mo., and *John P. Mc-
Cammon,* of St. Louis, Mo., for the appellant.

*J. E. McFadden,* and *O. Q. Claflin,* both of Kansas City, for
the appellee.

The opinion of the court was delivered by

PORTER, J.: These actions, though tried in different divisions of the district court, have been consolidated here because they involve the same questions of law and substantially the same facts. The Wyandotte Coal & Lime Company brought both actions against the Wyandotte Paving & Construction Company to recover for materials furnished in paving certain streets in Kansas City, Kan. The construction company made no defense. The Southern Surety Company furnished the bond required by statute guaranteeing the payment for materials and was joined as defendant. Each case was tried without a jury, and judgment was rendered against the surety company which appeals.

Separate suits were brought because the materials were furnished under different contracts. In the first suit plaintiff claimed a balance due of $630.23. The surety company claimed to be entitled to a credit of $900, represented by a canceled check which it offered in evidence. In the second case plaintiff sued to recover a balance of $2198.14, and the only question involved in that case is whether the surety company is entitled to a credit of $600, which it claims was paid on the account.

The Wyandotte Paving & Construction Company and the Rackliffe-Gibson Construction Company each entered into contracts with the city of Kansas City for the improvement of streets. Mr. Rackliffe was president of both companies, and Gracia Knowles was secretary-treasurer of the Rackliffe-Gibson company and also secretary of the Wyandotte Paving & Construction Company. Mr. Fenton was the superintendent of both companies and had charge of the work of improving the streets under the various contracts between the city and each company. It also appears that the principal office of both construction companies was in the same suite of rooms in St. Joseph, Mo.

The question of law in the first case turns upon the proper application of a check for $900 which the surety company claims was paid by the Wyandotte Paving & Construction Company, and wrongfully credited by plaintiff to the account of the Rackliffe-Gibson Construction Company. Mr. Mer-

stetter, the general manager of the plaintiff company, after testifying to the value of the material furnished in that case, the credits given and the amounts remaining due, further testified that the Rackliffe-Gibson Construction Company was indebted to the plaintiff for material furnished in carrying out certain contracts not involved in these actions; that on January 23, 1914, he received from that company a check for $1000 with directions to apply it to the account of the Rackliffe-Gibson company; that he applied the payment as directed and deposited the check in the bank; that some days later the check was dishonored for want of funds, and he communicated by telephone with the offices of the Rackliffe-Gibson company at St. Joseph and was assured that they would attend to the matter promptly. Also, that he talked about it to Mr. Fenton, and a few days later, February 2, Fenton met him in the street and said: "Here are two checks to take up the check for $1000"; that one of the checks was for $100 and the other for $900, both payable to the Wyandotte Coal & Lime Company; that they went immediately to the bank, where he indorsed the two checks, and the dishonored check was surrendered to Fenton; that he made no change on the books, but allowed the original credit of $1000 to the Rackliffe-Gibson company to stand as it was given the day the $1000 check was received.

It appears that the Southern Surety Company, which was surety on the bond of the Wyandotte Paving and Construction Company in the Georgia avenue and Yecker avenue contracts, had arranged with the Commercial National Bank that no checks drawn by the Wyandotte Paving & Construction Company would be cashed without the countersignature of the surety company. Both the $900 and $100 checks, which were produced at the trial, were countersigned by the surety company and bore the words "Georgia Avenue Account" and "Yecker Avenue Account," respectively. It is the contention of the surety company that these memoranda and the countersignature of the surety company were notice to the plaintiff that the checks were to be applied as payments upon the particular contracts therein referred to. Mr. Merstetter testified, however, that he did not see any countersignature on either check; that he was not aware at that time the Southern Surety Company was surety for the Wyandotte Paving & Construc-

tion Company on either the Georgia or Yecker avenue contracts; that he did not see the memoranda and that his attention was not directed to them. His testimony was that he had no knowledge of any arrangement between the bank and the Southern Surety Company with respect to the manner in which the checks should be signed.

The circumstances under which these two checks were received are corroborative of the testimony of Mr. Merstetter to the effect that his attention was not challenged to the manner in which they were indorsed nor the memoranda upon them. They were handed to him on the street, and with the statement of the manager of the Rackliffe company that they were given to take up the check that had been dishonored. He and Fenton went at once to the bank for that purpose; all that was necessary for him to do was to place the indorsement of his company on the checks and to see that the dishonored check was taken care of. It was the natural thing for him to regard the incident as closed and to allow the account on the books to remain as though the first check had been paid when it first reached the bank. Moreover, it appears that when the check for $900 was given the amount due on the Yecker avenue contract was only about $600. All these circumstances were doubtless given weight by the trial court in finding generally in favor of the plaintiff.

Both paving companies were indebted to the plaintiff for material. Both were represented by the same superintendent and manager. That the two checks were signed by the Wyandotte Paving & Construction Company, even if he had noticed the fact, was not, we think, sufficient as a matter of law to put Merstetter upon inquiry, in view of all the circumstances, and particularly in view of the fact that both companies were managed and conducted by the same officers. The manager of the company which had given the dishonored check informed him that the two checks were for the specific purpose of taking up the one that had been dishonored. We think that the general judgment in plaintiff's favor must be sustained.

In the other case the surety company claims that the account sued upon should have been credited with the amount of two checks, one for $100 and one for $500. The check for $100 is one of the two checks which plaintiff claims was given for the

purpose of taking up the $1000 dishonored check. That has been disposed of in the other case and need not be again considered. The check for $500 was one which plaintiff credited to the account of the Rackliffe-Gibson company, and in addition to being drawn in the same way in which the other two checks were drawn, it bore in one corner the word "cement." Mr. Merstetter testified that he credited that check according to specific directions received in a letter, which was introduced in evidence and which reads:

"As per your wire of today we have sent a check payable to your order for $500. Kindly apply this on your old account and we will send you another check very shortly.     RACKLIFFE-GIBSON CONSTRUCTION Co.,
                                        By GRACIA KNOWLES, Secy. and Treas."

As contended by plaintiff, there was no street or contract for paving to which the word "cement" could apply, nor was there a separate account kept by plaintiff for cement furnished. It further appears from the testimony of Mr. Merstetter that he never noticed the memorandum "cement" on the check, and merely followed the directions contained in the letter and credited it to the account of the Rackliffe-Gibson company.

There is another point suggested which we think applies with equal force to both claims of the surety company, which is, that there is no privity of contract between the plaintiff and the surety company. The latter was not the owner of the fund out of which the payments were made. The right of appropriation of payments belongs exclusively to the debtor and creditor, and a third party can not be heard to complain of a different appropriation from that agreed upon by the debtor and creditor. The surety company had an arrangement with the bank that it should have the privilege of countersigning checks given by the Wyandotte Paving & Construction Company. But we are at a loss to understand how the plaintiff, who was a stranger to that transaction, could be bound by it. It was aware that the two paving companies were managed by the same officers, and when it was offered a check by the manager of both companies and told to apply the check to the satisfaction of a debt owing to it from one of them, it was not obliged, although the check was signed by the other company, to inquire by what authority the company making the payment used the check of the other.

Since, under all the circumstances shown by the evidence in these cases, the Wyandotte Paving & Construction Company made no direction to apply the checks in controversy to its own indebtedness, and on the contrary permitted its own officers to apply them to the payment of the debts of the other company, the surety has no right to complain. In the language of Judge Story:

"This right of appropriation is one strictly existing between the original parties; and no third person has any authority to insist upon an appropriation of such money in his own favor, where neither the debtor nor the creditor has made or required any such appropriation." (*Gordon v. Hobart*, 2 Story, 243, 264, 10 Fed. Cas. 787, 794.)

"Third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of the debts, can not control the application of a payment by either the debtor or the creditor, and neither the debtor or the creditor need apply the payment in the manner most beneficial to such persons." (30 Cyc. 1251, and cases cited in the notes.)

This is the rule applied in case of an ordinary accomodation surety; and certainly an insurance company engaged in the business of writing surety bonds for a compensation has no right to insist upon a more favorable one.

The judgments are affirmed.