No. 36,152

M. C. Lewis, *Appellee*, v. The Texas Company, *Appellant*.

(150 P. 2d 160)

Opinion filed July 8, 1944.

*George Siefkin*, of Wichita, argued the cause, and *T. B. Kelley*, of Great Bend, *Robert C. Foulston, Samuel E. Bartlett, George B. Powers, C. H. Morris* and *John F. Eberhardt*, all of Wichita, were on the briefs for the appellant.

*Wayne H. Lamoreux*, of Great Bend, was on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This action involves the interpretation of a certain written "guaranty of account" and its proper application to certain credits which the creditor allowed on the account. Plaintiff prevailed and defendant appeals.

The action was tried on the following agreed statement of facts:

"First: Plaintiff, a resident of Great Bend, Kansas, was, at all times material, a bulk station consignee of the defendant, engaged in selling defendant's petroleum products as an independent contractor. Plaintiff remitted all proceeds to the defendant for products sold, and defendant then paid plaintiff for his commission.

"Second, that Keith Russell was a lessee of the defendant in Great Bend, doing business as Russell's Texaco Service, dispensing petroleum products purchased from the plaintiff as consignee for the defendant, and performing the customary gasoline filling station services.

"Third, that on September 15, 1942, the plaintiff signed and delivered to the defendant the written instrument entitled 'Guaranty of Account,' which is attached to the petition as Exhibit A.

"Fourth, Keith Russell discontinued doing business in December, 1942, and requested the defendant to credit his account with certain credit memoranda covering returned merchandise and credit cards which he delivered to the defendant. The amount of credit so applied amounted to the sum of $381.35. Subsequently, Russell became entitled to an additional credit of $52.62, which was given by credit memorandum dated April 29, 1943.

"Fifth, as of the date when Russell discontinued business, he was indebted to the defendant in the amount of $1,428.74, which indebtedness he has confirmed in writing to the defendant.

"Sixth, Defendant applied upon said indebtedness of $1,428.74, the credits of $381.35 and $52.62 referred to in the fourth paragraph above, subsequent to December 31, 1942, leaving a net balance of $994.77 due and unpaid. Defendant demanded payment from Russell, and he having failed to pay, defendant over the objections of the plaintiff, deducted the entire amount of $994.77 from the money held by it that would otherwise have been paid to plaintiff as commissions earned and due him from the defendant. That is, defendant required plaintiff to pay said entire amount of $994.77.

"Seventh, prior to the filing of this action, the plaintiff, through his attorney, made demand upon the defendant in writing for a refund of the sum of $300.00, deducted by the defendant from money held by it that otherwise would have been paid to the plaintiff by defendant as commissions earned and due. The defendant refused to refund said amount of $300.00.

"Eighth: I [Mr. Lamoreux] would like to stipulate *the* subsequent to December, 1942, that Russell entered into an agreement with the defendant, The Texas Company, to pay his debt at the rate of $150.00 per month, and that he failed to carry out the terms of that agreement or to pay anything."

The "guaranty of account" which appellee gave the appellant to secure the Russell account reads:

"GUARANTY OF ACCOUNT

"September 15, 1942.

"The Texas Company,
"Denver, Colorado.
"Gentlemen:

"For value received, and in consideration of the credit which you may hereafter extend, the undersigned hereby jointly, severally and unconditionally guarantee payment, when due at your office in Denver, Colorado, of any and all present or future indebtedness owed to you by Keith Russell, hereinafter called the debtor, and hereby agree punctually to pay such indebtedness if default in the payment thereof be made by the debtor. *Excepting the first three Hundred Dollars of such debt.*

"The undersigned expressly waives notice of acceptance of guaranty, demand, and notice of non-payment, and consents to any extensions of time of payment of any and all of the indebtedness hereby guaranteed.

"This is intended as a continuing guaranty applying to all present and future indebtedness, howsoever arising, and to all sales and advances made by you to the debtor until the same is revoked by the undersigned in writing to the office of The Texas Company at Denver, Colorado, marked for the attention of the Credit Manager.

"Witness my hand and seal this 15th day of September A. D. 1942.

"Name: (signed)   M. C. LEWIS."

(Italics ours.)

The italicized sentence in the "guaranty of account" was not contained in the form prepared by appellant but was later inserted with typewriter before its execution.

In this action appellee sued appellant to recover the sum of $300 which he claimed appellant improperly withheld from commissions due him. It is appellee's contention that under his guaranty he is not liable for the first $300 of indebtedness on the Russell account. He therefore insists the trial court properly held the credits appellant allowed to Russell, the debtor, on the account in the total sum of $433.97 should have been deducted first from the sum of $1,428.74, leaving a net balance of indebtedness in the sum of $994.74 due and payable and that appellee was liable for that net amount of indebtedness minus the first $300 thereof or for the sum of $694.77 instead of $994.74. Appellee concedes that under the terms of his guaranty he is liable for the punctual payment of Russell's indebtedness if default in the payment thereof is made by the debtor but he contends there was no default until the debtor and creditor had settled their account by striking a balance and that such balance was not ascertained until the creditor, appellant, had allowed the debtor a credit on the account in the sum of $433.97.

On the other hand appellant contends:

Russell defaulted when he failed to pay the sum of $1,428.74, the amount conceded to be due when he quit business; at that moment appellee was liable in that sum minus $300 or for $1,128.74; appellant reduced that liability of appellee when it allowed credits in the total sum of $433.97 and thus reduced the balance due to $994.77; that appellee, the guarantor of the account, cannot control the application of credits and insist that they be applied on the guaranteed portion of the account in the absence of an agreement between the creditor and the guarantor of the account which gives the guarantor that right; that appellant, the creditor, had the right to apply the credits it allowed subsequent to the time Russell quit business to the unguaranteed portion of the account, in the absence of other directions from the debtor; that where a debtor owes debts, some secured and others unsecured, and neither debtor nor creditor has directed the application, the law will apply the payments on the unsecured debts.

In support of these contentions appellant relies upon the following: *State v. Guaranty Co.*, 81 Kan. 660, 106 Pac. 1040; *Coal & Lime Co. v. Construction Co.*, 97 Kan. 203, 154 Pac. 1012; *Barber*

*County Comm'rs v. Lake State Bank,* 121 Kan. 223, 246 Pac. 524; *Brown-Crummer Investment Co. v. Bankers Service Co.,* 130 Kan. 583, 287 Pac. 579; 38 C. J. S., Guaranty, § 78.

To the same general effect, also, are 24 Am. Jur., Guaranty, § 76; annotations 21 A. L. R. 704; 49 A. L. R. 952; 60 A. L. R. 203; Arant on Suretyship, § 76; 1 Brandt on Suretyship and Guaranty, 3d ed., § 364.

The court is familiar with the general doctrine enunciated in the authorities relied upon by appellant. Those general principles are well established as disclosed by the above authorities and many others which might be cited. Our difficulty lies in applying those principles to the terms of the guaranty and the facts as stipulated. Under the guaranty appellee agreed to pay punctually any and all indebtedness if default in the payment thereof was made by Russell. We think the pivotal question in this action is, when did such default occur and what was the extent thereof under the stipulated facts? Was the trial court unwarranted in concluding the default did not occur until a final balance was struck by the allowance of the designated credits? We do not think so. If a contract existed between Russell and appellant covering appellant's duty to apply merchandise on hand and credit cards on the account at such time as Russell might cease to do business, such a contract is not disclosed by the stipulation. We do, however, find that when Russell quit business in December, 1942, he requested that certain credits be allowed in the form of merchandise returned and credit cards which he delivered to appellant. Apparently appellant granted that request as it allowed such credits on the account. Appellant probably was unable to determine the total amount which would be realized on the credit cards earlier than April 29, 1943. At any rate that was the date upon which appellant made the credit memorandum on that item.

It is true Russell had confirmed the fact he was indebted in the sum of $1,428.74 when he quit business in December, 1942. It appears from the stipulation, sixth paragraph, that no demand was made on Russell to pay until those credits were all ascertained and allowed which left a net balance due on the account in the sum of $994.77. The stipulation does not disclose a demand for payment was made prior to that time on Russell or appellee. Under all of these circumstances there is some basis for concluding appellant did not consider Russell to be in default prior to the allowance of the last credit endorsed on the account. After all credits were al-

lowed Russell owed $994.77 and that appears to be the only amount for which appellant ever made demand on Russell. Since there is a substantial basis for believing the parties regarded the sum of $994.77 as constituting the extent of Russell's default, we think the trial court was warranted in concluding appellee was entitled to have $300 deducted from that amount in order to determine the extent of his liability.

The judgment is affirmed.

WEDELL, J. (dissenting): A careful examination of the stipulated facts and the guaranty discloses nothing which in my opinion takes this case out of the general well-established rule laid down in the decisions relied upon by appellant and numerous other cases which might be cited.

In *Coal & Lime Co. v. Construction Co.*, 97 Kan. 203, 154 Pac. 1012, we held:

"Third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of several debts, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons." (Syl. ¶ 1.)

In *State v. Guaranty Co.*, 81 Kan. 660, 106 Pac. 1040, we held:

"In running accounts where there are items of debit and credit and there has been no appropriation of payments by the parties the ordinary rule is that the first debit items are extinguished by the first credit items, but that is subject to the other rule that where a debtor owes debts, some secured and others unsecured, and neither debtor nor creditor has directed the application, the law will apply the payments on the unsecured debts." (Syl. ¶ 5.)

These decisions are in harmony with the well-established general rule. See authorities relied upon by appellant and others cited in the majority opinion.

This case was tried upon an agreed statement of facts and the written guaranty. It thus becomes the duty of this court to determine what the admitted facts establish. (*In re Estate of Wallace*, 158 Kan. 633, 635, 149 P. 2d 595.) While the stipulation is not as full and complete as it might be it discloses certain facts which must be borne in mind, as follows:

Appellee, the guarantor, obtained the merchandise from appellant, the principal, on consignment. The guarantor sold the merchandise to the debtor, Russell, the filling station operator. The guarantor collected for all products sold and remitted the proceeds to appellant. His commission was paid by appellant out of the proceeds

after they were received by appellant. In the guaranty appellee agreed to pay *punctually any and all present or future indebtedness* of Russell, if Russell defaulted in making the payment for products purchased, except the first $300 of such debt. Instead of collecting the debt as it came due and making such payments punctually to appellant the guarantor permitted Russell's indebtedness to increase until it amounted to the sum of $1,428.74 at the time Russell quit business. That specific amount of indebtedness was confirmed by Russell in writing.

There is nothing in the stipulation to indicate the debtor was not required to pay appellee, the guarantor, for merchandise as and when purchased. In the absence of such a stipulation the purchase price was of course due and payable at the time of purchase and Russell was therefore continuously in default of payment and the guarantor was liable for all sums of such indebtedness, present and future, except the first $300 thereof.

The actual indebtedness due at the time Russell quit business was not stipulated to be $1,428.74 minus credits which appellant might agree to allow upon the established and confirmed debt. Neither does the guaranty say the guarantor shall be liable for the payment of the indebtedness except the first $300 after deducting all credits which subsequently may be applied on the debt.

Under the stipulation appellant was under no duty or obligation to accept any merchandise or credit cards from Russell. By doing so it did, however, decrease Russell's confirmed indebtedness and relieved appellee under his guaranty to the extent of $133.97, that being a portion of the indebtedness for which appellee would have been liable under his guaranty after the first $300 was deducted from the confirmed indebtedness. Appellee was therefore relieved of liability on the first $300 of the account in accordance with the terms of his guaranty and in addition thereto benefited to the extent of $133.97 by reason of the credits which appellant voluntarily allowed on the indebtedness. There was no direction from the debtor to apply the credits on the guaranteed portion of the debt. Under the law appellant had a right to apply the credits as it did and appellee, the guarantor, could not compel the application of $300 thereof to that portion of the debt he had guaranteed. It was applied to the first $300 of the confirmed debt and that constituted full compliance with the guarantor's rights under the guaranty.

THIELE, J., joins in the foregoing dissenting opinion.