THE CHICAGO LUMBER COMPANY, *Appellee*, v. H. S. DOUGLAS et al., Partners, etc., et al. (THE FEDERAL UNION SURETY COMPANY, *Appellant*).

No. 18,052.

SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*What Constitutes "Material" under the Law—Liability of Surety.* Lumber furnished for and used in the making of forms for a concrete structure as provided in the contract and specifications for its erection, and which is largely consumed and rendered valueless by such use, is material within the meaning of the mechanic's-lien law (Civ. Code, §§ 649-662) and of the provisions of a bond given by a surety company in the form provided for in section 660 of the civil code, the obligation of which is that the contractor will "pay all indebtedness incurred for labor and material furnished and used in and about said contract work, or which might become the basis of a lien."

2. —— *Payment by Contractor—Application of Money by "Materialman"—Surety Not Released.* The surety company can not escape liability upon the bond for material furnished to and used by the contractor in the building on the ground that money received from the owner and paid to the materialman was applied by the latter in discharge of an earlier indebtedness of the contractor for material used on other buildings, no direction having been given by the contractor as to the application of the payment at the time it was made.

3. CORPORATIONS—*Suretyship for Profit—Not "Favorites of the Law."* The law does not have the same solicitude for corporations organized for the purpose of giving indemnity bonds and which make suretyship a business for profit that it has for voluntary sureties. Such corporations are essentially insurers, and in determining their rights and liabilities the rules peculiar to suretyship do not apply.

Appeal from Shawnee district court, division No. 1. Opinion filed April 12, 1913. Affirmed.

*L. S. Ferry, T. F. Doran,* and *J. S. Dean,* all of Topeka, for the appellant.

*C. J. Evans,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal involves the liability of the appellant, the Federal Union Surety Company, which guaranteed the faithful performance of a contract of Douglas & Evans with the state of Kansas to furnish the material and erect the foundations of the Memorial Building and also that it would pay all indebtedness for labor and material furnished and used in and about the work. Douglas & Evans were general contractors, and were at the time engaged in building structures other than the Memorial Building. They purchased a large quantity of lumber from appellee, the Chicago Lumber Company, which was used to make forms for the concrete foundations of the Memorial Building, and they had previously purchased lumber from appellee for other buildings for which payment

had not been made. On May 10, 1910, a payment of $4000 was made by the state to the contractors, and on the following day they paid $2000 of the amount received from the state to appellee which appellee applied on the oldest bills held against the contractors and which were for materials used on other buildings. Of the lumber furnished for the concrete forms the court held the surety company liable for $1322.98, being the cost of the same less $88, the value of the lumber which was fit for use again after it was removed from the building.

It is first contended that the surety company is not liable for the lumber used in the concrete forms for the reason that it did not become a permanent part of the foundations or other portion of the building. By its bond the company guaranteed that the contractors would faithfully perform the contract in all particulars and "pay all indebtedness incurred for labor and material furnished and used in and about said contract work," and there is an added clause, "or which might become the basis of a lien." The form of the contract was evidently the one ordinarily used where the owner is a private person against whose property a lien might be obtained. If the lumber placed in the concrete forms can be said to have been used in and about the contract work the surety company is liable for it. Although no mechanic's lien can be created where the state is the owner, counsel for both parties argue the case on the theory that the rule of liability of the surety company under its bond is the same as it would have been if the owner of the building was not the state and the property improved was subject to a lien. Assuming that to be the rule we have the question whether a person who furnishes the material for the forms into which the concrete for the walls of the building were poured is entitled to a lien. On one side it is contended that it is essential to the existence of a lien that the material shall have entered into and become a part of the perma-

nent structure.   On the other side it is insisted that it is not necessary that the material shall be incorporated into the building if it is material provided for in the contract and is used and consumed in whole or in part in the erection or repair of the building.

The statute gives a lien to any person who shall "furnish material for the erection, alteration or repair of any building, improvement or structure" (Civ. Code, § 649) on the land of the owner with whom a contract is made.   There is a division of judicial opinion as to whether a lien is given unless the material actually enters into and becomes a part of the completed structure, and this arises, to some extent, from the language of the different statutes providing for liens. In *Hill v. Bowers*, 45 Kan. 592, 26 Pac. 13, it was said that no lien can be allowed for material purchased for a building or structure on the land of the owner unless it in fact goes into the building.   This was said in a case where the material was not used in any way in or about the structure.   It was purchased for the building of a fence on the owner's land, and was taken and left for a time on the highway in front of the land but was afterwards seized and sold by the sheriff on execution. That rule was followed in *McGarry v. Averill*, 50 Kan. 362, 31 Pac. 1082, 34 Am. St. Rep. 120, where it was held to be error to refuse an offer of proof that the material purchased to improve a lot was never used in the construction of the building upon the lot but was taken away and used elsewhere.   The question involved in these cases was whether a lien could be had for material purchased for use in the erection of a building or other structure but which in fact was never used for that purpose.   It not only did not enter into or become a part of the completed structure but was not even used to promote the erection, alteration or repair of the same, and involved a very different question than is presented in the case under consideration.   Here the material was used in the erection of the building and

it became temporarily a part of the foundations of the building. Its use was provided for in the plans for the building and was included in the contract of the parties. By its use most of the material was destroyed or rendered unfit for any other practical use. One witness said that lumber so used became watersoaked, twisted and practically valueless, and that architects now generally provide in their specifications that new lumber should be used for such forms. Some of the thicker or dimension lumber was not destroyed and that much of it was used for other purposes. For this a credit of $88 was allowed. However, one of the contractors said that they would have been as well off if they had thrown it aside and procured new lumber. The material having been provided for in the contract and having been used and practically consumed in the erection of the building, can it be held to be lienable under the law or can the surety company be held liable for such material?

In *Kennedy v. Commonwealth*, 182 Mass. 480, 65 N. E. 828, a like question was involved where the statute gave a lien for material purchased for or used in the construction or repair of buildings. Lumber for forms was used in a building to hold the concrete in place while hardening, after which it was taken down and used again, and after being so used several times was finally sold for firewood. The court held that the lien statute did not contemplate the giving of a lien for all labor and all kinds of material that might incidentally promote the construction of the building but only for such materials as entered into the construction and became a part of the structure. The court placed material so used in the same class with the tools of the mechanic or the horses sold to the contractor to haul the material to the building. The same court, in a later case, sustained a claim for a lien for gunpowder used in the building of an aqueduct. To accomplish the work it became necessary to excavate through rock and

powder was used in blasting a trench for a conduit, and this was done in accordance with a provision of the contract. When the Kennedy case was cited as an authority against the allowance of a lien it was said:

"This court has never had occasion to consider a case like the present, where the material was used directly upon the work or the structure in process of construction, for the purpose of bringing it into proper form or condition, and was entirely consumed in the use. In such a case it may be said that, in a general sense, the material enters into the completed structure. In this broad sense it forms a part of it, as it loses its identity and ceases to exist as a separate substance, in producing a direct effect upon the construction, which effect remains as a part of the result shown in the completed structure." (*Sampson Co. v. Commonwealth,* 202 Mass. 326, 333, 88 N. E. 911.)

In California, where lumber was used as a temporary structure in connection with the building of a steel bridge it was held that a lien could not be had for material used in the temporary structure which was moved away when the permanent bridge was complete, the court saying that the statute meant that:

"The materials must be used, not merely in the process of construction, but 'in the structure'—that is to say, they must be used as the materials of which it is constructed." (*Stimson Co. v. Los Angeles Traction Co.,* 141 Cal. 30, 32, 74 Pac. 357, and cases cited.)

The same court, in 1912, decided that a mechanic's lien might be had for lard oil furnished and applied on the threads of joints of pipe used in a structure, and also for soapstone used as a lubricant in order to facilitate the pulling of the electric wires through the pipes in the building. It can hardly be said that the oil or soapstone remained as a part of the permanent structure, but they appear to have been allowed upon the theory that they were used in construction, and therefore were lienable. (*Pacific Sash & Door Co. v. Bumiller,* 162 Cal. 664, 124 Pac. 230.)

In *Oppenheimer v. Morrell,* 118 Pa. St. 189, 12 Atl.

307, it was held that one who furnished lumber to erect a scaffold for laying brick in the walls of a building did not acquire a lien thereon under the statute.

It has been decided, too, that the cost of coal used in generating power to operate a steam shovel in excavating for a reservoir can not be recovered from a surety company which had agreed to be liable for materials furnished in and about the work. (*Philadelphia, Appellant, v. Malone,* 214 Pa. St. 90, 63 Atl. 539.)

Other cases to the same effect are: *United States v. Morgan,* 111 Fed. 474; *Pennsylvania Co. v. Mehaffey,* 75 Ohio St. 432, 80 N. E. 177; *Cincinnati, etc., Railroad v. Shera,* 36 Ind. App. 315, 73 N. E. 293.

On the contrary it has been held that material used directly upon the structure, which promotes its construction and is consumed in the use, really enters into and is a part of the completed structure. In line with this view it was held that dynamite furnished for use in excavating for a railroad was material within the meaning of the lien law. In reply to the argument that explosives should be regarded as a part of the contractor's plant, like picks, shovels and mechanical appliances, the court of appeals of New York said:

"A steam shovel, an engine and boiler, picks, shovels, crowbars and the like, are tools and appliances, which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work and are thereafter invisible except as they survive in tangible results. We think that explosives when used as substitutes for other recognized 'materials' are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts and bridges that we can see and feel." (*Schaghticoke Powder Co. v. G. & J. Ry. Co.,* 183 N. Y. 306, 312, 76 N. E. 153, 2 L. R. A., n. s., 288, 111 Am. St. Rep. 751.)

In *Powder Co. v. Railroad,* 113 Tenn. 382, 83 S. W.

354, 67 L. R. A., 487, 106 Am. St. Rep. 836, the same question was considered and it was said:

"The fact that the materials were consumed in the use, and were thus destroyed in the construction, we think does not deprive the furnisher of his lien. The consumption of explosives is the only use that can be made of them, and their consumption is absolutely necessary to the excavation of tunnels through rock. In other words, they are material which enter into the building and grading of the road as much so as trestles, bridges, and culverts contain materials which are necessary to the grading of the road at such places as require trestles and bridges and culverts." (p. 392.)

Authorities of like effect are: *Keystone Mining Co. et al. v. Gallagher et al.*, 5 Colo. 23; *Giant Powder Co. v. Flume Co.*, 78 Cal. 193, 20 Pac. 419; *Giant-Powder Co. v. Oregon Pac. Ry. Co.*, 42 Fed. 470, 8 L. R. A. 700.

An authority more directly in point is *Avery & Sons v. Woodruff & Cahill*, 144 Ky. 227, 137 S. W. 1088. Under a statute similar to our own it was held that lumber used to make forms for concrete was material for which a lien may be had. It was said that the parties contemplated that the material would be used up in making the building and could not be treated as mere tools and appliances of the workmen. It was also said:

"Appellees furnished material to be used in the erection of a building, which was as necessary as the sand, cement, water or other material. In fact, the building could not have been erected without lumber to be used for the purpose for which appellees' was furnished." (p. 229.)

In a similar case in Missouri, where lumber was furnished for forms for concrete walls, the following rule as to liens was laid down:

"Where certain material is provided for by the contract in erection of a structure and is furnished and used accordingly, and is either in whole or in part consumed in its use, the material-man is entitled to a lien for the material thus consumed in the erection of the

structure, to the extent of the consumption of its reasonable value, regardless of the fact whether or not such material formed a permanent part of the structure when completed. Consumption of value means the depreciation in the market value of the material by the use provided for by the contract." (*Lumber Co. v. Construction Co.,* 161 Mo. App. 723, 729, 141 S. W. 931.)

Another case closely in point is *Barker & Stewart L. Co. v. Marathon P. M. Co.,* 146 Wis. 12, 130 N. W. 866, where lumber and hardware were furnished to build a temporary cofferdam which was necessary to the construction of a permanent dam. Under a statute giving a lien for material used "for or in or about the erection, construction, repair," etc., of a structure it was determined that the life and substance of the material having gone into the fabric of the structure as effectively as had the stone, cement or lumber which retained its existence as a part of the structure, a lien attached.

In our opinion the authorities last cited state the true rule of liability. The mechanic's lien, although unknown to the common law, is not to be given a narrow and strict construction. It is intended as an enlargement of the rights of those who furnish labor and material and who can not conveniently protect themselves in any other way. It is a general and remedial statute, and the rule that statutes in derogation of the common law shall be strictly construed does not apply to it. (Gen. Stat. 1909, § 9850.) On the contrary, such statutes are to be liberally construed with a view of advancing the beneficent purposes which the legislature was seeking to accomplish by the enactment. (*Lumber Co. v. Water Co.,* 48 Kan. 182, 29 Pac. 476, 15 L. R. A. 652, 30 Am. St. Rep. 301.)

A reasonable interpretation of our statutes, we think, fairly includes the material used and consumed

in the erection of the concrete walls.  As counsel for appellee says:

"This is coming to be an age of concrete.  Great concrete buildings are constantly being erected in all our cities.  Several thousands of dollars' worth of lumber will frequently be used up for forms in the erection of a single building.  And architects and contractors must include such lumber in specifications and contracts as an inevitable part of the cost."

The material in the forms furnished by appellee was understood by all to be a necessary part of the construction of the building.  For a time these forms were an essential part of the walls, columns and partitions. They were provided for in the contract and their character was included in the specifications.  While the walls were hardening they were as essential to the structure as the cement and sand which remained in the walls in a different form after the work was completed.  These forms operated to enhance the value of the land on which they were used as did the labor in setting them up.  They were finally taken down and removed, but the life and substance of the material had been used up in the erection of the building.  The material can not be regarded as a part of the contractors' plant because it was impregnated with cement and rendered practically unfit for other uses.  It was used directly in the construction of the building, and being consumed in that use it can be fairly said that within the meaning of our statute it entered into and was used in the erection of the building.  It is clear that it came within the terms of the bond as it was "material furnished and used in and about said contract work."

It is next contended that the surety company should have been allowed a credit of $2000, the amount paid by the contractors to the Chicago Lumber Company on May 11, 1910.  The money from which this payment was made was obtained from the state in consideration of the work done on the Memorial Building, but it was

applied to an old debt due from the contractors for material furnished under other contracts. It appeared that the contractors were carrying on a great many building contracts while they were constructing the Memorial Building. They had an account with a bank into which the moneys derived from all the contracts were deposited, and the bills for material and labor were all of them paid out of this account on the personal check of the contractors. The lumber company furnished materials on a number of these contracts, and checks to pay them were given to the lumber company from time to time by the contractors. When the check for $2000 was given to the lumber company there was no direction as to how the payment was to be applied, nor does it appear that the lumber company had any notice that the money was obtained from the state. There is some testimony that the manager of the lumber company was informed as to the source from which the money came shortly after the payment was made, but he testified that he had no recollection that any such information was given to him. However, the laborers and materialmen were not under obligations to watch the dealings between the state and the contractors. A bond had been given to secure the payment of their claims. That bond having been given and there being no provision in it requiring those furnishing labor and material to watch the source from which the money paid was derived or to make any particular application of payments when made, they owed no duty to the surety company to do so. No liens could be obtained upon the building and no equities could arise as between the lumber company and the surety company. The bond given conformed substantially with the provisions of section 660 of the code. In cases where property may be subject to liens for labor and material the statutory bond operates as a substitute for the rights and equities which may be acquired under the lien law. The legal relations which arise

between the owner and those who furnish labor or materials under the mechanic's lien law is cut off by the bond. In this case the lumber company had no interest in the money due from the state, nor any right in the state's property which it could enforce under the law. After the bond was given the only relation there was between the contractors and the lumber company was the ordinary one of debtor and creditor, and, as far as the surety company is concerned, the money paid to the contractors by the state was their own and they could do with it as they pleased. The surety company could claim nothing by way of subrogation to the rights of the state, as the state had paid in full for the work and there was no fund or security in its hands which any claimant could reach. The state had no interest in the application of the money and is claiming nothing under the bond. There were only two conditions in the bond: one, the faithful performance of the contract by the contractors, and as this condition had been fully performed the state had no direct interest in the bond and neither had the lumber company any interest in this condition of the obligation; the other was the unqualified condition that the surety company would pay all indebtedness incurred for labor and material furnished and used in the building, and that was one for the benefit alone of the laborers and materialmen. For a valuable consideration the surety company gave this bond guaranteeing that the labor and material furnished would be paid for. The giving of such a bond relieves the laborer and materialman from looking after liens or other security. The owner is then at liberty to pay his contractor when he pleases without liability to any subcontractor, and the contractor is free to draw his money from the owner and pay it out as he may choose. The duty of the lumber company and the liability of the surety company are measured by the terms of the bond. There is nothing in it, as we have seen, which requires that money received

by the contractor for the structure shall be applied on the claims of those furnishing labor and material, but there is an absolute and unqualified guarantee that all indebtedness or labor and material shall be paid. In a case in Michigan where a bond was given by a contractor to insure the payment of labor and material furnished on the contract it was held that the sureties were not relieved by reason of the payment of an antecedent debt from the contract price of the improvement. It was said:

"This bond did not, in terms, provide that the contractor should apply his earnings to pay the laborers or material men, and the statute does not provide for such a bond. It undertook that the contractor should perform his personal obligations in his own way. It contemplated that he would receive and disburse his money as should suit his convenience. This contention depends upon an alleged equity that the money earned shall be applied only upon the account for materials furnished for the particular job. It is not supported by the letter of the bond or statute, and we think it is not supported by authority." (*People v. Powers*, 108 Mich. 339, 343, 66 N. W. 215.)

Appellant contends, and cites some cases to support the theory, that sureties, who are favorites of the law, are entitled to have money paid to their creditor applied to the payment of the debt for which they are sureties rather than to earlier or unsecured debts. The cases are not applicable, even if it could be held that an equity might have arisen in favor of a gratuitous surety. The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are in fact insurers, and in determining their rights and liabilities the rules peculiar to suretyship do not apply. (*Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544; *Medical Co. v. Hamm*, ante, p. 138,

130 Pac. 650; *Guaranty Co. v. Pressed Brick Co.*, 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; Note, 23 A. & E. Ann. Cas..1085; Note, 33 L. R. A., n. s., 513.)

We think the court correctly ruled in denying the credit, and finding no error the judgment of the district court will be affirmed.