No. 24,661.

The Ludlow Valve Manufacturing Company, *Appellee*, v. The Fidelity and Casualty Company of New York, *Appellant*.

#### SYLLABUS BY THE COURT.

Public Improvements — *Contract for Waterworks System — Materials Furnished Contractor — Contract Abandoned — Contractor's Bondsmen Liable to Material Man for Materials Furnished Contractor.* A contractor agreed with a city to build a waterworks plant, gave bond under section 661 of the code of civil procedure to prevent mechanics' liens, commenced the construction of the plant, ordered material which was shipped, and then quit work and abandoned the contract. The city then took material that had been shipped, placed it in the plant, and completed it. *Held,* that the bondsmen are liable for the material furnished to the contractor, taken by the city and placed in the plant.

Appeal from Crawford district court; Andrew J. Curren, judge. Opinion filed July 7, 1923. Affirmed.

*J. J. Campbell, P. P. Campbell, P. E. Nulton,* all of Pittsburg, *J. C. Rosenberger,* and *Dupuy G. Warrick,* both of Kansas City, Mo., for the appellant.

*Otto Bayse,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Marshall, J.: This is an action on a bond given under section 661 of the code of civil procedure. Judgment was rendered for the plaintiff, and the defendant appeals.

The case was tried without a jury, and the special findings of fact were made by the court. Those findings summarized show that E. L. Garretson and E. D. Garretson were partners doing business as E. L. Garretson & Bros.; that on about July 2, 1920, they entered into a written contract with the city of Arcadia, in Crawford county, to construct a waterworks system for the sum of $27,000; that the Garretsons executed a bond to the state of Kansas under section 661 of the code of civil procedure; that the defendant signed the bond as surety thereon; that the Garretsons commenced construction of the plant; that they ordered material therefor from the plaintiff, among which was thirty-four fire hydrants, the subject of this litigation; that the Garretsons used a part of the material ordered, but did not put the thirty-four fire hydrants into the system; that they were shipped to the Garretsons, but remained in the railroad depot for some time; that in December, 1920, the Garretsons ceased to work on the plant and abandoned their contract; that the plaintiff had no knowledge that the Garretsons had abandoned the contract at the time the hydrants were shipped; that the hydrants were replevined by the city and were used by it in completing the plant; and that the plaintiff has not been paid for the hydrants. The evidence showed that more than $26,000 of the contract price of $27,000 had been paid to the Garretsons when they abandoned the contract.

The defendant urges a number of matters as error, but all depend on or can be reduced to one proposition—that the plaintiff cannot recover because, if there had been no bond, there could not have been a lien on the waterworks plant for the hydrants sold to the Garretsons. This is based on the argument that no lien can attach because the Garretsons did not place the hydrants in the plant. The statute under which the bond was given, section 661 of the code of civil procedure, reads:

"That whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding one hundred dollars, with any person or persons for the purpose of making any public improvements, or constructing any public building or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient securities to the state of Kansas, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

The defendant argues that in order for there to be a lien in favor of one who furnishes materials to be used in making improvements, it

must appear that the materials were used for that purpose. *Delahay v. Goldie,* 17 Kan. 263, *Rice & Floyd v. Hodge Bros.,* 26 Kan. 164, *Hill v. Bowers,* 45 Kan. 592, 26 Pac. 13; *McGarry v. Averill,* 50 Kan. 362, 31 Pac. 1082, and *David v. Doughty,* 96 Kan. 556, 152 Pac. 660, are cited to support that argument. The rule declared in these cases is firmly established in this state. When we look to ascertain whether the materials for which a lien is claimed were used in the construction of the waterworks plant at Arcadia, we find that those materials were so used. Therefore, the rule urged by the defendant has been complied with.

The defendant argues that in order for material men to have a lien, it must appear that the materials were "incorporated into the improvement by or with the authority of the contractor to whom they were furnished." When the Garretsons abandoned the contract, the city was compelled to adopt measures to secure the completion of the waterworks system. The city had a cause of action against the Garretsons for the damages sustained, but was compelled to adopt such reasonable measures as would mitigate the damages. The city had the right to complete the contract for two reasons: One, that it was necessary to have the plant constructed; and the other, to reduce the damage that might be sustained. While the contract did not provide for any such contingency, yet the right to complete the plant and the obligation to reduce damages followed as a necessary legal consequence of the Garretsons abandoning their contract.

The city was not a party to the bond given by the Garretsons, but either directly or indirectly paid the consideration for that bond. The city was not a stranger to the bond. The city procured the giving of a bond and was to be protected by it against mechanics' liens. The city was a party to the contract between it and the Garretsons and was as much interested in the bond as the Garretsons or others who furnished material or performed labor for building the waterworks system.

When the Garretsons quit work and abandoned the contract, they did not cancel the order for the hydrants nor return them after they arrived at Arcadia. The hydrants were left apparently for the city to do with as it pleased.

Cases somewhat analagous to the present one have been before the courts of other states. We quote from the syllabus or headnotes to some of those cases.

"The defendant was erecting a house on his lots, and made an agreement with a contractor to furnish all the material and labor for the plain and ornamental plastering therein. The contractor employed the plaintiff to do a certain part of the work on the ornamental plastering, the major portion of which was done at the shop of the contractor, in making necessary designs, models, and casts, which were exclusively intended for and adapted to the construction of the ornamental plastering, and of no value except for such purpose. The defendant and his contractor adopted the shop as the place for the doing of such preliminary work of constructing the ornamental plastering for the house instead of the premises where the house was being erected. After the plaintiff had completed his work a controversy arose between the defendant and his contractor as to their respective rights under the contract. Thereupon the contractor refused to permit any of such product of the plaintiff's labor to be placed in the house and it never was actually delivered upon the defendant's lots or became a part of his house. *Held*, following *Howes v. Reliance Wire Works Co.*, 46 Minn. 44, and *Burns v. Sewell*, 48 Minn. 425, that the plaintiff is entitled to a lien on the house and lots for the value of all his labor." [*Berger v. Turnblad*, 98 Minn. 163.]

"When, after giving a notice to terminate a building contract, as provided thereby, on the contractor's failure to perform, the owner recalls the notice and allows the contractor to resume work, and on a second failure to perform, takes possession, as provided by the contract, the effort at performance after the recall of the notice is not to be deemed a new contract, so as to relieve the surety of the original contract from subsequent liability, when, under the terms of the contract, the notice did not of itself terminate the contract, and the owner had power to recall it, and the contract was actually terminated only by the owner's taking possession on the contractor's final failure to perform." [*Smith v. Molleson*, 148 N. Y. 241, syl. ¶ 7.]

"If nothing is due to the contractor, under a building contract, when a lien is filed by his subcontractor for materials furnished and used in the building and the contractor abandons the undertaking without just cause, but the owner completes the building according to the contract and under a provision thereof permitting it, the lien of the sub-contractor attaches to the extent of the difference between the cost of completion and the amount unpaid to the contractor when the lien was filed." [*Campbell v. Coon*, 149 N. Y. 556, syl. ¶ 3.]

"The death of the principal contractor during the completion of a contract for the improvement of a village street, which contract was thereafter completed by the administrator, does not deprive the sub-contractor who has furnished the material which has gone into the work, of his statutory right to a lien upon the fund arising from the contract." [*Vernon v. Harper*, 79 Ohio St. 181.]

"Where on the construction of a building the principal contractor becomes a bankrupt, and the owner requests or consents to an order of the bankruptcy court directing the receiver or trustee of such contractor to complete his contract, and such order is made, the mere fact of bankruptcy of the original contractor will not preclude recovery against the owner, or the enforcement

of a lien against the property for services rendered or materials furnished within the scope of the contract." [*Eberle et al. v. Drennan et al.*, 40 Okla. 59, syl. ¶ 10.]

"Where there is a partial cessation of work upon a building because of differences between the owner and the contractor, but the abandonment of the contract is not complete and permanent until after furnishing of certain materials, lien may be claimed therefor." [*Huttig Bros. Mfg. Co. v. Denny Hotel Co.*, 6 Wash. 122.]

In a number of these cases, perhaps all of them, the owner was authorized by the contract to complete the work if the contractor should abandon it, but that does not materially differ from the situation in the present case because here the owner without being specifically permitted to complete the plant, had authority under the law to do so. If section 661 of the code of civil procedure did not exist and no bond of any kind or for any purpose had been given by the Garretsons, the plaintiff, when the city took the hydrants and placed them in the plant, would have a claim against the city for the value of those hydrants and would have been entitled to a lien on the property to secure the payment of that claim. The bond was given to prevent such a lien from attaching.

"The rule that sureties are favorites of the law does not apply to corporations engaged in the business of furnishing bonds for profit." (*Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544. See, also, *Medical Co. v. Hamm*, 89 Kan. 138, 144, 130 Pac. 650; *Lumber Co. v. Douglas*, 89 Kan. 308, 131 Pac. 563; *School District v. McCurley*, 92 Kan. 53, 142 Pac. 1077; and *Hensley v. School District*, 97 Kan. 56, 58, 154 Pac. 253.) Surety bonds are practically contracts of insurance. (*The State v. Construction Co.*, 91 Kan. 74, 81; 136 Pac. 905; *Hensley v. School District*, 97 Kan. 56, 58, 154 Pac. 253.)

The statute requires that the bond shall be conditioned that the contractor shall pay all indebtedness incurred for material furnished in the construction of the improvement. The bond was in the form required by law. The contractors incurred indebtedness for material to be used in the construction of the plant. That material was so used.

The court concludes that the defendant is liable to the plaintiff for the price of the hydrants that were placed in the plant by the city after the Garretsons abandoned the contract.

The defendant has no just cause for complaint against the conclusion reached because it appeared in the evidence, but was not

found by the court, that the. Garretsons gave another bond with the defendant as surety that the Garretsons would complete the . waterworks system according to their contract. The defendant was liable to the city on that bond for the violation of the contract by the Garretsons. In the present action, the city is eliminated, and the liability of the defendant goes direct to the plaintiff on the bond given under section 661 of the code of civil procedure. Instead of collecting from the city and the city collecting from the defendant, the plaintiff seeks to collect direct from the defendant. One bond or the other is liable for the cost of the hydrants. It does not make any substantial difference to the defendant which bond pays it.

The judgment is affirmed.