FAUSETT BUILDERS, INC. v. GLOBE INDEMNITY COMPANY.

4-9706                                    247 S. W. 2d 469

Opinion delivered March 31, 1952.

*Wood & Smith,* for appellant.

*Barber, Henry & Thurman,* for appellee.

Holt, J. November, 1949, C. E. Slavens, Inc., entered into a series of separate contracts to build dwelling houses for appellant, Fausett Builders, Inc. Each contract provided: "The Contractor agrees to construct a two bedroom dwelling on Lot in Pine Forest, an Addition to the City of Little Rock, Arkansas; 1900 Green Meadow Drive according to plans and specifications furnished the owner by the Contractor and on file in Owner's office, and to furnish all labor, materials, tools and equipment necessary to construct said dwelling. 2. Contractor agrees to file with Owner a Performance Bond in a Corporate Surety Company authorized to do business in the State of Arkansas, guaranteeing the performance of the Contract. Owner agrees to pay the premium on said bond."

A series of "Performance Bonds" (one for each contract) were executed by Slavens as principal, and Globe Indemnity Co. as surety, with each bond providing: "Now, therefore, the condition of the above obligation is such, that if the above bounded Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set

forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect.''

Slavens defaulted on its contracts with appellant (Fausett) by failing to pay labor and materials arising out of the construction of the houses and as a result numerous liens, suits to foreclose liens, and a levy by the United States of alleged taxes due by Slavens, were filed against appellant, Fausett Builders, Inc.

In order to defend against these various claims and suits filed by Slavens' creditors, Fausett employed a Little Rock law firm and paid out in attorneys' fees a total of $450 for fourteen separate suits.

It was stipulated: ''That the defendant, Globe Indemnity Company, made performance bonds for and on behalf of Cameron E. Slavens, as principal, and Fausett Builders, Inc., as obligee. * * * That Globe Indemnity Company paid Fausett Builders, Inc., in full the amount of Slavens' default all the materialmen and labor claims arising by virtue of the default of Slavens in the performance of the contract. * * * That no question is raised as to the amount of the fees paid by Fausett Builders, Inc., namely $450 to the firm of Wright, Harrison, Lindsey & Upton, the only question being the right of the plaintiff to recover the amount of fees paid to the attorneys under terms of the performance bonds.''

The cause was submitted to the trial court (a jury having been waived) and all issues were adjudged in favor of appellee. This appeal followed.

The judgment of the trial court was correct.

Appellant says that the following single legal issue is presented: ''Where a commercial surety guarantees an owner of real estate reimbursement for 'all loss and damage (owner) may sustain by reason of failure or de-

fault' of a building contractor to perform his agreement with the owner, are attorneys' fees paid by the owner to defend suits to enforce mechanic's liens resulting from the contractor's default an item for which the owner is entitled to be reimbursed?''

Appellee states the issue in this language: ''Is a Surety, which performs in full all the obligations of its principal, liable for its obligee's attorneys' fees incurred in determining, as between the principal and obligee, the amount of the liability?'' or, to state it in another way, ''Is the Surety's liability co-extensive with that of the principal, and no greater?''

It appears plain from the terms of Slavens' contract with Fausett that he, Slavens, was bound to furnish all material and labor and to perform in the manner therein specified, and in the event of failure on the part of Slavens to so perform, then his surety, Globe Indemnity Co., was bound on its bond to do what Slavens was obligated to do under that contract; that is, Globe was bound to ''pay over, make good and reimburse'' Fausett for ''all loss and damage'' which Fausett ''may sustain by reason of failure on the part of said Principal,'' (Slavens to ''do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal * * * done and performed * * * in the manner in said contract specified,'' and no more.

Here, the contract, or bond, takes the form of an ordinary suretyship and is not one of indemnity.

''Suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another. * * * The terms of the contract of which the surety promises performance must be read into his own contract. The principal's contract and the bond or undertaking of the surety are to be construed together as one instrument. * * * The suretyship contract must be express, as the surety's promise will never be enlarged to cover the implications growing out of the language employed. * * * A surety's liability is

always measured by the express terms of his covenant, which is contained in the obligations of his principal as defined in the main contract and any applicable statute, and in the conditions of the bond. The right of recovery against the surety does not extend beyond that against the principal." *Stearns Law of Suretyship*, Fifth Edition, pages 1, 13, 14 and 262.

As was said by this court in *Hall* v. *Equitable Surety Company*, 126 Ark. 535, 191 S. W. 32, in distinguishing between an indemnity contract and one of suretyship: "Where the contract takes the form of *ordinary suretyship*, 'the agreement of the surety is that he will do the thing which the principal has undertaken,' " whereas, " 'in indemnity contracts the engagement is to make good and save another from loss upon some obligation which he has incurred, or is about to incur, to a third person, and is not as in guaranty and suretyship a promise to one to whom another is answerable.' "

It will be observed that there was no provision in said bond or contract between Slavens and Fausett, for payment by Slavens of any attorneys' fees that Fausett might incur. It would have been an easy matter to have placed such a provision in either the bond or contract, or both, had the parties so desired.

The liability of Globe under the plain terms of its bond was equal to and no greater than that of its principal, Slavens, under Slavens' contract with Fausett. We think under no theory (and none is claimed by appellant) could Fausett force Slavens to pay its attorneys' fees (such as are involved here) under the above contract which it had with Slavens, and since, as indicated, appellee's (Globe's) liability on its bond was no greater than that of its principal (Slavens), Globe is not liable for the attorneys' fees sought, in the circumstances.

In support of our view, we quote somewhat extensively from a well reasoned case from the Supreme Court of Montana (1931),—*Federal Surety Co.* v. *Basin Const. Co., et al.*, 91 Mont. 114, 5 Pac. 2d 775,—wherein the same point, as here, was considered. That court said: "This

item of damages is predicated on the provisions of the bond to the effect that 'the surety will idemnify the owner (here meaning the plaintiff) from and against any and all loss and damage directly arising by failure of the principal * * * to perform faithfully said contract.'

"The general rule is that attorney's fees are not recoverable in actions at law or in equity, except when expressly allowed by statute, * * * or the contract in suit makes definite provision for the payment thereof. Here we have neither an express provision of statute nor of the contract warranting their recovery either as damages or as costs, and in our opinion the court erred in including them in its findings and in the judgment. A provision in a contract for the allowance of attorney's fees upon action instituted to recover on the contract is in the nature of a provision for special damages, recoverable only upon appropriate allegations and proof. * * * The obligation of a surety is coextensive with and measured by the promises of the principal to the obligee contained in the contract. The surety by the bond only binds itself to the performance of the acts which the principal promises to perform as part of its contract. Both the bond and the contract are to be construed and considered together in determination of the surety's liability, in instances such as this, where the bond is given for the faithful performance of the contract, * * * and where, as here, there is no express provision made either by statute or by the contract or the bond for the allowance of attorney's fees as a part of the damages or costs in an action for breach of contract, they are not recoverable. In our opinion the words 'any and all damages directly arising by failure of the principal to perform faithfully said contract,' as employed in the bond, were not intended to include attorney's fees, but rather the usual and ordinary damages resulting from a breach of the contract." See, also, *Nat. Surety Co.* v. *Trustees of Runnelstown Consol. School,* 146 Miss. 277, 111 So. 445.

Accordingly, the judgment is affirmed.

GRIFFIN SMITH, C. J., not participating.

ROBINSON, J., dissenting. In the contract between the contractor and the property owner, the contractor agreed to file with the owner a "performance bond" guaranteeing the performance of the contract. Pursuant to this agreement the contractor furnished the Globe Indemnity Company's "contract bond" in the penal sum of $4,071.30. The bond provides as follows: "Now, therefore, the condition of the above obligation is such, that if the above bounded Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

The plain, obvious meaning of this bond is that the contractor shall pay over, make good and reimburse the property owner for all loss and damage which the property owner may sustain by reason of failure or default on the part of the contractor, and if the contractor fails to do so the Indemnity Company would pay for such loss to the extent of $4,071.30. Here, the obligee suffered the loss of $450 which it had to pay in attorneys' fee to protect properly the obligee's interest by reason of the failure and default of the contractor in doing what he agreed to do.

"Reasonable counsel fees which have been incurred in resisting the claim indemnified against may be recovered as a part of the damages and expenses when an action is brought to recover indemnity either upon a right of indemnity implied by law or arising under a contract." 27 Am. Jur. 474.

"Generally, the indemnitee is entitled to recover reasonable attorney's fee, and reasonable and proper legal costs and expenses which he is compelled to pay as a result of suits in reference to the matter against which

he is indemnified, provided he acts in good faith and with due diligence in prosecuting or defending such suits.'' 42 C. J. S. 585-6. Also, 31 C. J. 436 states as a general rule indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and cites the case of *Talley* v. *Ganahl,* 151 Cal. 418, 90 Pac. 1049, wherein the court said:

''The bond sued on covenanted that the contractors should complete the building within the time specified and should deliver it to the owner 'free from all liens and claims that may be made or filed against the same, for or in respect of any labor or materials performed or furnished on or for said building.' After the completion of the building, certain persons who had performed labor for Parsons in the erection of the building, and others who had furnished him materials therefor, filed claims of liens against the premises and began suits to foreclose the same. It became necessary for Mary A. Talley to employ an attorney to advise here in regard to these suits and make proper defense thereto sufficient to protect her interest, and she did so at an expense of $100. * * * The amount paid to the attorney in these suits was claimed in the complaint as special damages and was allowed by the court, after due proof of the facts. We perceive no error in this. It was damages proximately caused by the breach of the agreement to deliver the building free from liens, a convenant for which the bond was security.''

Appleman on ''Insurance Law and Practice,'' Vol. 11, p. 116, cites *Talley* v. *Ganahl* as authority for the statement that in a situation the same as the one presented in the case at bar, the property owner is entitled to recover on the bond reasonable attorney's fee incurred while defending against mechanics' liens.

In the case at bar the Indemnity Company contracted to pay all loss and damage which the property owner might sustain, up to a named amount, by reason of the failure of the contractor to carry out his contract. There is no contention in this case that the property owner did not act with due diligence in employing an attorney or that the attorney's fee is excessive. In fact, for all

the record shows the action of the property owner in employing an attorney in this instance may have saved the Indemnity Company thousands of dollars.

In the case of *National Surety Company* v. *Southern Lumber & Supply Company,* 181 Ark. 105, 24 S. W. 2d 964, this court quoted with approval from 21 R. C. L. 107-8, as follows: ''The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are in fact insurers, and in determining their rights and liabilities, the rules peculiar to suretyship do not apply.'' *Chicago Lbr. Co.* v. *Douglas,* 89 Kan. 308, 131 Pac. 563, 44 L. R. A., N. S. 843; *Ludlow Valve Mfg. Co.* v. *Fidelity & Casualty Co. of New York,* 114 Kan. 151, 217 Pac. 282; *Salt Lake City* v. *O'Connor,* 68 Utah 233, 249 Pac. 810, 49 A. L. R. 941; *Puget Sound State Bank* v. *Gallucci,* 82 Wash. 445, 144 Pac. 698, 39 A. & Eng. Ann. Cas., 767; *Wyandotte Coal & Lime Co.* v. *Wyandotte Paving & Const. Co.,* 97 Kan. 203, 154 Pac. 1012, Ann. Cases 1917C, 580.

According to the plain language of the contractor's bond made by the Indemnity Company and the weight of authority, the plaintiff is entitled to recover.

For the reasons set out herein, I respectfully dissent.

Mr. Justice MILLWEE joins in this dissent.